FILED

2015 Mar-27  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN  DIVISION

| | |
|---|---|
| LARRY WAYNE NORWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case no:  1:13-cv-01196-SLB-JEO |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On June 27, 2013, the plaintiff, Larry Norwood, filed this *pro se* action pursuant to the Federal Tort Claims Act (FTCA), alleging that defendants United States of America, the Federal Bureau of Prisons (BOP), Dr. W. Mark Holbrook and Dr. Stokes provided negligent medical care in connection with an injury to his left foot that occurred on February 10, 2011.  (Doc. 1 at 1).

### I.  Pertinent Procedural History

On April 11, 2014, an Order for Special Report was entered directing defendants United States of America, Dr. W. Mark Holbrook and Dr. Stokes to respond to the allegations in plaintiff's complaint.  (Doc. 11).[1]  The plaintiff was

---

[1] In the Order for Special Report, the magistrate judge noted that the Federal Bureau of Prisons ("BOP") was also named as a defendant, but was "not a proper defendant in a FTCA cause of action."  (Doc. 11 at 2 n.1 (citing 28 U.S.C. §

1

afforded twenty days from the entry date of the order to specifically assert whether the court had misunderstood or misconstrued the claims pled in the complaint. (*Id.* at 4). He was also advised that he would "not be allowed to amend the complaint to add parties or claims after the date of the order except upon express leave of court." (*Id.*). The plaintiff filed no corrections to the magistrate judge's recitation of the factual allegations made in support of his claims within the time period allotted.

On June 25, 2014, the United States filed a Notice of Substitution and certified that defendant Dr. William Holbrook "was acting within the scope of his employment with the U.S. Bureau of Prisons at the time of the incident out of which the [FTCA] claims arose." (Doc. 22, 22-1). On July 10, 2014, defendant United States of America filed a special report accompanied by exhibits and affidavits. (Doc. 25). On July 15, 2014, the plaintiff filed a "Petition to Remove Dr. Willie Stokes from this Civil Action Only." (Doc. 28).

On July 22, 2014, the plaintiff was notified that the special report would be construed as a motion for summary judgment, and he was afforded thirty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. (Doc. 34). He also was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825

2679(d)(1))).

2

(11th Cir. 1985).  (Doc. 34).  On July 22, 2014, the court deemed the special report to be a motion for summary judgment.  (Doc. 35).  On July 23, 2014, the plaintiff moved to voluntarily dismiss the Federal Bureau of Prisons as a defendant.  (Doc. 36).

On August 6, 2014, the plaintiff moved to amend the complaint in order to increase the dollar amount of damages he requests from $500,000 to $5,000,000. (Doc. 39).  On August 7, 2014, the United States submitted a response (doc. 40) in opposition to the plaintiff's amended complaint and on August 14, 2014, the plaintiff filed a reply, (doc. 43).  On August 17, 2014, the plaintiff filed a petition to add facts to his proposed amended complaint.  (Doc. 45).

On January 30, 2015, the magistrate judge filed a report and recommendation, recommending that defendant United States of America's motion for summary judgment be granted, and this case be dismissed with prejudice.  (Doc. 47).  The plaintiff filed objections to the report and recommendation (doc. 48) and moved to file an additional response on February 11, 2015, which consisted of a consultation report by Dr. Anthony Tropeano (doc. 49).

## II.  The Named Defendants

The United States filed a Notice of Substitution and certified that defendant Dr. William Holbrook "was acting within the scope of his employment with the U.S.

Bureau of Prisons at the time of the incident out of which the [FTCA] claims arose." (Doc. 22, 22-1).  The court finds that defendant United States of America is due to be **SUBSTITUTED** as defendant for Dr. W. Mark Holbrook, and the claims against Dr. W. Mark Holbrook are due to be **DISMISSED** for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

The plaintiff's "Petition to Remove Dr. Willie Stokes from this Civil Action Only," is construed as a Motion for Voluntary Dismissal of Dr. Stokes as a defendant pursuant Federal Rule of Civil Procedure 41(a)(1)(A), and the motion due to be **GRANTED**.  (Doc. 28).  The plaintiff's motion to voluntarily dismiss the Federal Bureau of Prisons as a defendant (doc. 36) also is due to be **GRANTED** as it is well established that the United States of America is the only proper defendant in an action brought pursuant to the FTCA.  *See Trupei v. United States*, 304 F. App'x 776, 782 (11th Cir. 2014) (quoting *Galvin v. Occupational Safety and Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) ("It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit.")).  For the foregoing reasons, the United States of America is the only remaining defendant.

### III.  Motion to Amend the Complaint, and
### Petition to Add Facts to the Amended Complaint

**A.    Plaintiff's Motion and Petition**

On August 6, 2014, the plaintiff filed a motion to amend the complaint.  (Doc. 39).  In it, he requests permission to amend his complaint for medical malpractice in order increase the dollar amount of damages from $500,000 to $5,000,000.  (*Id.* at 1). On September 17, 2014, he filed a petition to add facts to his proposed amended complaint.  (Doc. 45).  He claims that the medical staff is aware that his "left knee . . . lock[s] up" and causes him to trip or fall.  (*Id.*).

Specifically, the plaintiff alleges that "prior to . . . breaking his foot on February 10, 2011," the injury that gave rise to the present lawsuit, he "damaged his left knee in the year of 2006."  (Doc. 39 at 1).  The plaintiff "was examined by Orthopedic Specialists in Illinois, and 'Total Knee Replacement' (TKR) was recommended."  (*Id.*).  The plaintiff further alleges that he has been "transferred to numerous locations," and "nothing was ever done."  (*Id.*).  He states that he "had a follow up with the Orthopedic here at Talladega FCI . . . in 2009[,]" and "even though the Orthopedic states [he] needs a total knee replacement," Dr. Holbrook told the plaintiff that he "does not meet BOP standards for left knee operation."  (*Id.*).

The plaintiff also complains that when he arrived at FCI Talladega in 2008, he

had "a bump on his right hand" that medical staff stated was a "wart." (*Id.*). "Two years later, the same 'bump' turned out to be "Squam[ou]s Cell Cancer." (*Id.* at 2). On July 22, 2010, the plaintiff's hand was operated on, but he suffered a post-surgical infection because "no medical staff would treat the open wound" when FCI Talladega "was placed on lock-down status for . . . 7-8 days." (*Id.*). *See also id.* at 39 ("Operative Report"). When he was released from lockdown, "MLP Dela Cruz failed to remove all visible stitches" in the plaintiff's hand. (*Id.*). The hand "remained infected for 11 months and had to be operated on again . . . to remove 2 stitches." (*Id.*).

Finally, the plaintiff makes additional factual allegations concerning the state of his broken foot, the subject of the complaint. (*Id.*). He contends that he has two reports from Dr. Anthony Tropeano, an orthopedist, showing Tropeano had discussions with Dr. Holbrook about his "now deformed left foot . . . which has 'never' been operated on." (*Id.*). He complains Holbrook "allowed [him] to remain walking on his [newly] broken left foot for approximately one month after" Holbrook examined it, and that he "is still forced to walk on his now deformed left foot . . . which started with one broken bone, then two, and then three broken bones as time passed." (*Id.*). The plaintiff attaches several exhibits to his motion, a portion of which are medical records concerning his foot, with the remainder consisting of

medical records and administrative actions concerning his knee and hand.  (*Id.* at 5-40).

## B.    Defendant's opposition

On August 7, 2014, the defendant filed a response to the plaintiff's motion to amend.  (Doc. 40). The defendant opposes the increase in damages and argues that it "should be denied because it is prohibited by 28 U.S.C. § 2675(b)."  (*Id.* at 1). Specifically, the defendant argues that in "his initial Complaint and in his administrative tort claim, Plaintiff sought $500,000 in damages," but the "FTCA mandates that suit 'shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency.'"  (*Id.* at 1-2 (quoting 28 U.S.C. § 2675(b))). Such an amount may only be increased when it "'is based on newly discoverable evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegations and proof of intervening facts, relating to the amount of the claim.'"  (*Id.* at 2 (quoting 28 U.S.C. § 2675(b))).

## C.    Plaintiff's response

On August 14, 2014, the plaintiff filed a reply to the defendant's opposition. (Doc. 43).  He does not dispute the defendant's assertion that in his July 9, 2012, administrative tort claim he "valued his total damages at $500,000[,]" alleged only that "medical providers were negligent in treating his broken foot," and made no

"reference [to] any ailment related to [his] knee or hand."  (Doc. 40 at 3).  Nor does

he dispute that he was aware of his knee injury in 2006 and his hand injury in 2010

through June 2011.

However, the plaintiff also argues that when he filed the administrative tort

claim concerning his foot, he "had no way of anticipating that he would be neglected

for this amount of time and seeks further monetary award for the pain and suffering

he has endured."  (Doc. 43 at 1).  He asserts that his response to the defendant's

motion for summary judgment and the motion to amend, "fully set forth factual proof

that [he] has been denied adequate medical treatment since 2006" through a "pattern

of neglect."  (*Id.* at 3).

Other than complaining generally about his knee pain and his fingers, neither

of which bears a relationship to his foot injury, the plaintiff presents only two

instances of suffering that are arguably related to his foot injury.  (*Id.* at 1).  First,

during "a year and a half" time period, he continually developed a large callus on his

second left toe which had to be cut off two times per month.  (*Id.*).  Surgery was

finally performed on the toe, leaving "a gaping hole which must be cleaned every day

and is still bleeding and painful." (*Id.*).  Next, he declares that when he was examined

by Dr. Anthony Tropeano in 2013, "Tropeano discussed [his] left knee problem

which contributed to [the] breaking [of] his foot in February of 2011." (*Id.* at 2).

8

## D.     Analysis

After careful consideration, the court concludes that the plaintiff's motion to amend the complaint for damages in excess of the $500,000.00 he demanded in his administrative tort claim (doc. 39) is due to be **DENIED**, and his petition to add facts to the proposed amended complaint (doc. 45) is due to be **DENIED**.  "Only those claims presented initially to the appropriate administrative agency are cognizable in a tort action against the United States."  *Davis v. Marsh*, 807 F.2d 908, 912 (11th Cir. 1987) (citing *Bush v. United States*, 703 F.2d 491, 494 (11th Cir. 1983)).  Therefore, unless the plaintiff can establish an exception to this rule – namely, newly discovered evidence or proof of intervening facts – this court has no subject matter jurisdiction to approve his motion for excess damages.  For the reasons that follow, the court finds that the plaintiff has failed to establish that he falls within either exception.

### 1.     Hand and Knee

The plaintiff's hand and knee injuries are clearly not newly discovered evidence and have no bearing on the injury to or quality of treatment provided for his foot.  Accordingly, his motion for leave to amend the complaint to add excess damages for his hand and knee is due to be **DENIED**.  Alternately, as set out in Section IV, *infra.*, the plaintiff's motion is due to be **DENIED** because the plaintiff has failed to establish genuine disputed issues of material fact in connection with his

claim that the fracture of his foot was negligently diagnosed and treated.

### 2.    Calloused toe

The plaintiff does not provide any dates regarding the callous on his left second toe, including when it began, the year and a half it continued, and the date of his surgery.  He declared that he would "promptly submit" medical records to the court concerning the operation, but has never done so.  (Doc. 43 at 3).  Still, as set out below, he points to other exhibits previously submitted pertaining to his calloused toe.

His response to the defendant's motion for summary judgment also contains no argument concerning a callous on his toe.  (Doc. 37).  The attached medical records show that as early as October 29, 2012, and possibly as early as July 13, 2012, the plaintiff had a callous formation on his left foot, but not on his second left toe. (*Id.*, Ex. I at 53).  On February 28, 2013, Dr. Tropeano noted that the plaintiff "gets callus on the medial aspect of his foot and I have told him that with the type of fracture he had whether surgical intervention was done or not it was going to change his foot as it is a significant injury." (*Id.*, Ex. H at 45).  At that time, the plaintiff was prescribed a walking boot.  (*Id.*).

On April 24, 2013, the plaintiff complained of "bleeding on the left 2nd toe because of irritation from [his] walking boot." (*Id.*, Ex. I at 49).  On examination, the

10

nurse noted a "wound on the bottom of the left 2nd toe with thickened calloused skin; small amount of bleeding." (*Id.*). The plaintiff was advised to keep the wound clean and return to sick call as needed. (*Id.* at 51). On June 13, 2013, the nurse noted "thickened skin of the plantar aspect of the left 2nd toe with dried blood underneath. No sign of infection." (*Id.* at 57). The callus was removed and he was instructed to return to sick call as needed. (*Id.* at 58). On November 22, 2013, the nurse noted a "recent blister on end of 2nd toe. No cellulitis." (*Id.*, Ex. B at 24). On the same date, it was noted that the plaintiff "need[ed] debr[i]ding of callus on L 2nd toe." (*Id.* at 27).

Based on the foregoing, the court finds that the plaintiff's allegations regarding his calloused toe satisfies the exception to the rule that he is bound by the damage sum set out in his administrative tort claim. In other words, the proliferation and continuation of the injury to his second left toe was not reasonably discoverable at the time he filed his July 2012 administrative tort claim. However, as explained in the Section IV, *infra.*, the plaintiff has failed to establish genuine disputed issues of material fact in connection with his claim that the fracture of his foot was negligently diagnosed and treated. Therefore, the plaintiff's motion to amend the complaint for excess damages is due to be **DENIED** because the defendant is entitled to summary judgment on the question of liability.

11

3.    **The plaintiff's knee contributed to his February 20, 2011 fall**

The plaintiff alleges Dr. Tropeano discussed his knee problem in 2013, and follows it by stating "which contributed to his fall," but does not allege that Dr. Tropeano made that connection.  A new patient report written on January 9, 2013, by Dr. Tropeano shows that the plaintiff, not Tropeano, felt "like the knee contributed to his foot injury[.]"  (Doc. 37, Ex. H at 44, "Plaintiff's response to defendant's motion for summary judgment").  Even if Tropeano agreed with the plaintiff's belief that his knee contributed to his February 2011 fracture, such a statement, if true, would still have no bearing on the damages he requests for additional "pain and suffering" for his foot.

More importantly, however, the plaintiff knew well the condition of his knee before 2013, as he asserts that "'bone fragments'" were present in x-rays taken in 2010 and 2011 (doc. 43 at 2), and declares in his petition to add facts to his proposed amended complaint (doc. 45) that medical staff is aware that his "left knee . . . lock[s] up" and causes him to trip or fall.  (*Id.*).  Medical records show that on February 10, 2011, the plaintiff filed an inmate request form stating, "I was returning from breakfast this morning and . . . trip[p]ed on the sidewalk in front of Alpha Unit where the concrete and asphalt join.  My foot is swollen and should be looked at A.S.A.P.  Also a lot of pain in my foot and I cannot walk right now."  (Doc. 37,  Ex. A at 12

"Plaintiff's response to defendant's motion for summary judgment"). Another inmate request form shows that Dr. Holbrook issued the plaintiff a knee brace on February 10, 2011. (*Id.*, Ex. A at 17).

Thus, the plaintiff's allegations in the medical records he provides show that he either suspected or reasonably should have suspected his knee contributed to his February 2011 foot injury as early as the date it happened. Therefore, the plaintiff could have calculated the monetary damages he claims in connection with his February 2011 injury in his July 2012 administrative tort claim. In short, the plaintiff has not alleged newly discovered evidence that could not have been reasonably discovered or intervening facts justifying excess damages because he knew and it was reasonably foreseeable at the time of his February 10, 2011 injury that his knee could have contributed to it. As such, the plaintiff's motion for leave to amend the complaint to add excess damages for his knee to the extent it was a contributing factor to his February 2011 fall is due to be **DENIED**, and his petition to add facts in support of this proposed amended complaint (doc. 45) is due to be **DENIED**. Alternately, as set out in Section IV, *infra.*, the plaintiff's motions are due to be **DENIED** because the plaintiff has failed to establish genuine disputed issues of material fact in connection with his claim that the fracture of his foot was negligently diagnosed and treated.

## IV.  The Motion for Summary Judgment

The magistrate judge recommended that the motion for summary judgment filed by defendant United States be granted, and the case be dismissed with prejudice. (Doc. 47).  The plaintiff filed objections to the report and recommendation (doc. 48), and moved to file an additional response on February 11, 2015, (doc. 49).  The plaintiff's motion to file additional objections (doc. 49) will be **GRANTED**.

In his objections, the plaintiff argues that he

> received inadequate health care when he was first seen for a broken bone in his foot on <u>February 10, 2011</u>.  Community Standards of Health Care state that any anyone who suffers Norwood's type of injury shall immediately [be] given x-rays to rule out a fracture.  This standard of care exists both inside and outside of prison walls.  Inmate Norwood was entitled (at a minimum) to receive x-rays.  Had x-rays been performed at the outset of the fracture, then appropriate measures could have been administered.  Instead, the plaintiff was subjected to needless pain and suffering as the result.

(Doc. 48 at 3).  He claims Dr. Holbrook "has taken absolutely no action to correct either of these problems[,]" and points to Dr. Tropeano's January and February 2013 reports.  (*Id*. at 2).[2]

---

[2] The court notes that on August 28, 2013, the magistrate judge ordered the plaintiff to amend his 42 U.S.C. § 1983 complaint.  (Doc. 6).  In response, on September 13, 2013, the plaintiff requested that the court reconsider its order to amend, and specifically asserted that he "did not file his Claim for Damages pursuant to § 1983, nor does he want his action construed as one under § 1983, as his claim of (sic) for damages is due to the denial of the Tort Claim he filed against the defendants."  (Doc. 8 at 1).  The plaintiff further declared that he was

First and foremost, Dr. Holbrook's action or inaction with regard to the plaintiff's total knee replacement is not relevant to the negligence claim before the court, *i.e.*, the diagnosis and treatment of the plaintiff's fractured foot. As for the plaintiff's foot, "'[t]o prove liability in a medical malpractice case, the plaintiff must prove (1) the appropriate standard of care, (2) the doctor's deviation from that standard, and (3) a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff.'" *Hauseman v. University of Alabama Health Services Foundation*, 793 So. 2d 730, 734 (Ala. 2000) (quoting *Looney v. Davis,* 721 So. 2d 152, 157 (Ala. 1998). "To defeat a properly

---

not making "a constitutional claim that his civil rights were violated[, and that his] claim is due to the medical malpractice of employees of the Defendants, as is specifically laid out in his Claim for Damages." (*Id.*).

In the report and recommendation, the magistrate judge noted the plaintiff filed "no corrections to the magistrate judge's recitation of the facts made in support of the claims within the time period allotted. (Doc. 47 at 2). The plaintiff objects, and states that he did make such a request, but in fact, the plaintiff simply requested expedited discovery in order to determine whether there were any John Doe defendants that should be named for deliberate indifference to a serious medical need. (Doc. 48 at 4; *id.*, Exhibit D at 19-25). The magistrate judge denied the request without prejudice, and instructed the plaintiff that the discovery procedures in the Order for Special Report were sufficient to address his FTCA claims at the time. (*Id.*). The plaintiff filed no objections to the magistrate judge's ruling. Since the plaintiff clearly expressed at the outset of this case that he intended to assert only an FTCA claim, and the United States is the only proper defendant in such a case, his objections to the magistrate judge's characterization of his response to the Order for Special Report is without merit.

supported motion for a summary judgment on a medical-malpractice claim, the nonmovant ordinarily must present testimony from a 'similarly situated' medical expert." *Id.* (quoting *Levesque v. Regional Med. Ctr. Bd.,* 612 So. 2d 445, 449 (Ala. 1993)).

As to the plaintiff's initial injury, the question is whether medical professionals provided the proper standard of care upon being informed about the incident that precipitated the plaintiff's pain, and whether a deviation from the standard was the proximate cause of a particular injury to the plaintiff.  The plaintiff provides no citation for his general reference to "Community Standards of Health Care," and his contention that "anyone" who suffered from his "type of injury" should be immediately x-rayed is insufficient to create genuine disputed issues of material fact as to each element of his negligence claim.  Neither the initial injury as described by the plaintiff nor the course of treatment provided to him thereafter are such that a common layperson (juror or other trier of fact) could make factual determinations concerning the proper standard of care, or proximate cause of a resulting injury without the testimony of an expert witness.

Moreover, as set out in the magistrate judge's report and recommendation, and by this court's independent review of the record, the plaintiff's assertion that Dr. Holbrook did nothing to correct his medical problem is wholly belied by the

plaintiff's own allegations and the medical records.   Although the plaintiff declares that "he has no control over fabricated statements entered into the computer concerning his medical records[,]" and that [i]t appears that many records have been deleted," the plaintiff does not specifically point to any fabricated statements, nor does he describe any deleted medical records.  (Doc. 48 at 3).

The medical records establish that the plaintiff was fitted with two casts in early March 2011 once the fracture was discovered.  (Doc. 47 at 7 ("Report and Recommendation")).  Although these casts broke or were ill fitted, the plaintiff does not deny that he refused to allow a third cast to be placed upon the foot.  (*Id.* at 7-8).  He also does not deny that he was afforded shoe inserts, arch supports, a cane and walker (which he contends had a loose screw) to ambulate, but returned the cane and walker some time in March 2011.  (*Id.* at 8).

In May 2011, after a visit with an orthopedist (not Tropeano), the plaintiff was afforded a walker boot that he contends was unusable after approximately one month because the velcro would not remain attached.  (*Id.* at 10).  The plaintiff does not deny that he was allowed to convalesce and told to remain off of his foot from March to May 2011.  (*Id.* at 9).  The plaintiff does not deny that the healing progress of his foot was checked three times by x-ray between May and November 2011, and although two additional fractures were noted on other metatarsal bones, in November

17

2011, an orthopedist (not Tropeano) informed Dr. Holbrook the fractures had healed. (*Id.* at 11).

The plaintiff does not deny that he was given a walker boot and orthotic shoes in accordance with Dr. Tropeano's January and February 2013 instructions (*id,* at 11-12), which are set out in full *infra*. The plaintiff admits he returned the boot cast on February 19, 2014, because the lining was worn out and smelly. (*Id.* at 13). He also does not deny that he has been continually afforded numerous medications intended to ameliorate pain and treat other symptoms related to the foot. (*Id.* at 8-12).

The defendant's expert, Dr. Angel Ortiz, has attested that the plaintiff received the proper standard of care when he was initially injured and at all times thereafter. (Doc. 25-4).[3] As a physician, Dr. Ortiz is qualified to testify as to this standard. Admittedly, a portion of Dr. Ortiz's opinion is based on the premise that the plaintiff first reported that he was just walking when his foot began to hurt, and that the top of his foot was tender and painful when he bent it forward. (Doc. 25-4 at 3). The plaintiff disputes Ortiz's version of his initial injury report, and states that on February 10, 2011, he informed medical personnel that he tripped on the sidewalk. (Doc. 37, Ex. A at 12). This contention constitutes a disputed historical fact which

___

[3] Dr. Holbrook's affidavit is identical to Dr. Ortiz's affidavit with regard to the material representations made therein. (Doc. 25-3).

necessarily translates into a premise not taken into account by Dr. Ortiz in his affidavit – at least as to the plaintiff's initial treatment encounter.   Still, the initial injury as described by the plaintiff is not such that a common layperson (juror or other trier of fact) could make a factual determination concerning the proper standard of care, much less determine whether a breach in that standard of care was the proximate cause of any potential resulting injury without the testimony of an expert witness.

The plaintiff puts forth orthopedist Dr. Tropeano as an expert to establish his medical negligence claim by way of three reports written by Tropeano.  (Doc. 48 at 2).  The record shows that the plaintiff consulted with Dr. Tropeano for the first time on January 9, 2013, almost two years after his initial injury.  (Doc. 37, Ex. H at 44).  The plaintiff informed Tropeano that "there was a step-off area[, and h]e slipped and twisted his foot.  He had a lot of pain at the time." (*Id.*).  Tropeano noted that the plaintiff had "an antalgic gate." (*Id.*).  His left foot was tender upon squeezing, and the tenderness was localized "to his mid foot area." (*Id.*).  X-rays revealed "a mal-union of a lisfranc fracture that he had previously." (*Id.*).  Tropeano's assessment and plan were as follows:

> At this point the only really good options for that foot are going to be some type of fusion across his mid foot.  He is ready to proceed with that and he states he is taking multiple antinflammatories and right now is on Mobic.  I want him to continue to do that and I am going to try to get him a walker boot for times where it is more symptomatic for him

and hopefully that will give him a little bit further relief on that foot if he can use it when it tends to bother him.  Also some Tylenol No. 3 on occasion to try to give him some relief but at some point he may end up with a foot fusion and I may have to get him with a foot and ankle specialist to evaluate that and go from there.  As far as seeing him back, we will try and see him back in about three to four weeks to see if any of that makes any different (sic) for him or any progress and I will try to see what we can do to help him out.

(*Id.*).

After a followup consult on February 28, 2013, Dr. Tropeano wrote:

HISTORY: The patient is a prisoner at Talladega.  He had a lisfranc fracture dislocation.  He was treated conservatively and he has had persistent pain associated with it.  When we saw him last we put him in a boot and that has made some improvements on his pain but he still has a lot of mid foot type pain.  At some point he is going to probably need some type of midfoot fusion to really try and help him out as far as decreasing pain but he is going to have rigid mid foot area which is potentially going to cause problems for him elsewhere.  He understands that and right now we are going to try to keep him in the boot and see what we can do about trying to get him to somebody who does foot and ankle stuff to potentially change things around.

X-RAYS: Three views of the foot today and he has a mal-union of the lisfranc fracture.  There are arthritic changes throughout his mid foot area.  He has a change as far as the foot goes as far as positioning.

ASSESSMENT/PLAN: He gets callus on the medial aspect of his foot and I have told him with the type of fracture that he had whether surgical intervention was done or not it was going to change his foot as it is a significant injury.  It [is] almost always guaranteed to produce arthritic changes, the degree of arthritic changes, sometimes is different.  We will go ahead and try to get some things taken care of for him but for now use the boot as he tolerates and potentially we will try and get him set up with some custom orthotics that might be able to make a difference

20

for him as far as getting into some shoes but they are going to have to be custom molded in order for him to get in them to take some pressure off of his foot and that kind of thing and we will see if we can get that arranged.

(*Id.* at 45).

In his objections, the plaintiff alleges that he consulted with Dr. Tropeano a third time on January 28, 2015. (Doc. 48 at 2). He declares Tropeano "explained to [the plaintiff] that a mid-foot fus[]ion operation and a total-knee-replacement operation was medically necessary now." (*Id.*). He submits a typewritten orthopedist consultation request form generated by the Department of Corrections as proof thereof. (Doc. 49 at 3). The only portion of the report containing what appears to be a recommendation is handwritten, and contains many unexplained medical acronyms. (*Id.*). To the extent the court is able to recreate it typographically, the recommendation reads: "L TKA when L foot infection cleared. L foot diabetic neuropathy [with] mid foot OA [osteoarthritis], and healed MT fx's correct[ive] [or possibly 'count' or 'cont'] orthotics/shoes. A.T. [Anthony Tropeano]1/28/2015." (*Id.*). Next to Dr. Tropeano's recommendation is the following handwritten note signed by Dr. Holbrook on January 30, 2015, "consult placed for L TKA." (*Id.*).

After careful examination of Dr. Tropeano's reports, it is clear that Tropeano never gave an expert opinion regarding whether there was a breach in the standard

21

of care provided by Dr. Holbrook and prison medical personnel (either at the time of the plaintiff's initial injury or at any time thereafter), and whether the plaintiff was injured in any fashion as a proximate cause of a breach.  Moreover, the plaintiff has never requested appointment of a medical expert, and has not provided testimony from any medical expert or any identifiable learned treatise to establish that the standard of care was breached (either when he was not given an immediate x-ray upon report of tripping on the sidewalk or at any time thereafter) and that he was injured in any fashion as a proximate cause of such a breach.

For all of the foregoing reasons, the plaintiff has not satisfied his burden to produce evidence establishing genuine disputed issues of material fact regarding each element of his medical negligence claim.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the objections filed by the plaintiff, the court is of the opinion that the magistrate judge's report is due to be and is hereby **ADOPTED** and his recommendation is **ACCEPTED**.  The Court **EXPRESSLY FINDS** that there are no genuine issues of material fact and that defendant United States of America is entitled to judgment as a matter of law.  Accordingly, the defendant's motion for summary judgment is due to be **GRANTED** and this action is due to be **DISMISSED WITH PREJUDICE**.

22

A Final Judgment will be entered.

**DATED** this the 27th day of March, 2015.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE